## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARK CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-02801-BAH |
| | ) | Judge Beryl A. Howell |
| | ) | |
| FEDERAL BUREAU OF PRISONS, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Mark Carter, a prisoner appearing *pro se*, has sued the Federal Bureau of Prisons ("BOP"), alleging that his restricted access to the Trust Fund Limited Inmate Computer System ("TRULINCS") is arbitrary, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., and violates the U.S. Constitution. Pending before the Court is Defendant's Motion to Dismiss, ECF No. 13, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, this motion is granted.

## I. BACKGROUND

Plaintiff is incarcerated at the U.S. Medical Center for Federal Prisoners in Springfield, Missouri ("FMC"), serving a prison term of 175 months on his conviction, following his guilty plea, to being a pimp and sex trafficking children, in violation of 18 U.S.C. § 1591(a)(1). Compl., ECF No. 1 at 3-4. On October 22, 2021, plaintiff submitted to FMC staff an Informal Resolution Form, requesting that his "Trulincs email account be activated [because] I have done nothing to warrant preventing me from utilizing it." Compl. Ex. 3, ECF No. 1-1 at 5. Three days later, a Correctional Counselor replied: "Due to your offense conduct, you are not eligible to use Trulincs." *Id*. On December 2, 2021, in response to plaintiff's formal Request for an

Administrative Remedy, the FMC Warden explained (1) that using "TRULINCS is a privilege," which "the Warden may limit or deny . . . to protect the public from sexually offensive behavior," (2) that plaintiff's use of the TRULINCS electronic messaging system was restricted "[b]ased on information in [his] Presentence Investigation Report," and (3) that plaintiff's "offense conduct involved the use of electronic messaging to solicit or accomplish offensive conduct with a minor victim."  Def.'s Mot. to Dismiss, Ex. A., ECF No. 13-2 at 2 (citing BOP Program Statement ("PS") 4500.12, Trust Fund/Deposit Fund Manual (Mar. 14, 2018)).[1]

On February 14, 2022, plaintiff appealed to BOP's Central Office as the "3rd and final step in the administrative remedy process."  Compl. at 4 and Ex. 5C (Central Office Administrative Remedy Appeal).  According to plaintiff, BOP's Office of General Counsel "declared . . . that the BOP has statutory authority to deny or grant Trulincs messaging pursuant to 18 U.S.C. [§] 4042."  Compl. at 4.[2]  Plaintiff  subsequently filed the instant action  captioned "A Petition for an Order to Cease Selective Suppression of Free Speech" brought "pursuant to" the Administrative Procedure Act, 5 U.S.C §§ 701-06.  *Id*. at 1.

## II.  APPLICABLE LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 574 U.S. 744, 757-58 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim is facially plausible when the plaintiff pleads factual content that is more than

---

[1]     When deciding a Rule 12(b)(6) motion to dismiss, documents attached to or incorporated by reference in the complaint and documents attached to a motion to dismiss for which no party contests authenticity may be considered.  *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015); *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *see also Demissie v. Starbucks Corporate Office & Headquarters*, 19 F. Supp. 3d 321, 324 (D.D.C. 2014).

[2]     Plaintiff cites exhibit "Group 5, B," but no such exhibit is attached to the complaint. *See* ECF No. 1-1 at 15-17 (Exhibits 5A, 5C, and 5D).

"'merely consistent with' a defendant's liability," but "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007)); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).

In considering a motion to dismiss for failure to plead a claim on which relief can be granted, the court must consider the complaint in its entirety, accepting all factual allegations in the complaint as true, even if doubtful in fact, and construe all reasonable inferences in favor of the plaintiff.  *Twombly*, 550 U.S. at 555; *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) ("We assume the truth of all well-pleaded factual allegations and construe reasonable inferences from those allegations in a plaintiff's favor." (citing *Sissel v. U.S. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014))).  The court "need not, however, 'accept inferences drawn by [a] plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint.' " *Nurriddin*, 818 F.3d at 756 (alteration in original) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

## III.  DISCUSSION

Defendant argues that plaintiff states no claim under the APA or the Constitution.  For reasons discussed in more detail below, defendant is correct.

### A.  Regulatory Framework

TRULINCS "provides inmates with a computer system that does not jeopardize the safety, security, orderly operation of the correctional facility, or the protection of the public or staff."  PS 4500.12 at 14.1.  Use of this computer system "is a privilege; therefore, the Warden may limit or deny the privilege of a particular inmate" based on certain restrictions.  *Id*. at 14.2.  "[E]xclusion from participation" may not be based on generalizations but rather on the prisoner's

"individual history of behavior that could jeopardize the legitimate penological interests listed above." *Id.* at 14.9.  In a provision specific to "Sex Offenders," prisoners "whose offense, conduct, or other personal history indicates a propensity to offend through the use of email, or jeopardizes . . . the protection of the public or staff, should be seriously considered for restriction." *Id.* at 14.9(1).

TRULINCS falls within BOP's authority to take "charge of the management and regulation of all" federal correctional institutions and to, among other duties, "provide for the safekeeping, care, and subsistence of all persons" in its charge.  18 U.S.C. § 4042(a); 28 C.F.R. § 0.95-0.99.

### B. Plaintiff's APA Claim

The APA "empowers a court only to compel an agency to perform a ministerial or non-discretionary act," *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004), and thus does not apply if "statutes preclude judicial review," 5 U.S.C. § 701(a)(1), or "explicitly excludes from judicial review those agency actions that are  'committed to agency discretion by law,'" *Sierra Club v. Jackson*, 648 F.3d 848, 855 (D.C. Cir. 2011) (quoting 5 U.S.C. § 701(a)(2)).  Congress has stated unambiguously that the APA's judicial review provisions, 5 U.S.C. §§ 701-706, "do not apply to the making of any determination, decision, or order under [the] subchapter" governing "Imprisonment" of convicted persons.  18 U.S.C. § 3625; *see id.* §§ 3621-3626.  Therefore, this claim necessitating review of the Warden's decision is precluded by statute and thus appropriately dismissed under section 701(a)(1).[3]

---

[3]    The discretionary act exclusion that defendant advances, *see* Def.'s Mem., ECF No. 13-1 at 8-12, warrants the same result.  The exclusion applies "where statutes are drawn in such broad terms that in a given case there is no law to apply" and "when the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Sierra Club*, 648 F.3d at 855 (cleaned up).  In deciding whether action is committed to agency discretion, a court must consider "both the nature of the administrative action at issue and the language and structure of the statute that supplies the applicable legal standards for reviewing that action." *Id.* Restricting a prisoner's access to the correctional facility's email system for authorized reasons plausibly falls within

### C. Plaintiff's Constitutional Claims

Plaintiff posits that the denial of his access to the prison's email system violates the First Amendment's free speech clause and the Fifth Amendment's due process clause. *See* Compl. at 11-20. Both claims are unavailing.

### 1. First Amendment

Although "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution," *Turner v. Safley*, 482 U.S. 78, 84 (1987), the constitutional rights of convicted prisoners are "subject to restrictions and limitations" by virtue of their lawful incarceration and the "legitimate goals and policies" of penal institutions. *Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979). The law is well-settled that "freedom of association is among the rights least compatible with incarceration" and "[s]ome curtailment of that freedom must be expected in the prison context." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (citations omitted)). Thus, a prisoner does not "have an unrestricted First . . . Amendment right" to communicate "by electronic mail," and a "prison's decision to restrict an inmate's rights under" the First Amendment "is permissible so long as it reasonably relates to legitimate penological interests." *Sebolt*, 749 F. App'x at 460 (citing *Turner*, 482 U.S. at 89-91); *see Miles v. Scanlon*, 2021 WL 1809834, at *5 and n.3 (W.D. Mich. May 6, 2021) (noting courts "have routinely agreed" that "[w]hile prisoners have a First Amendment right to communicate with the outside world, they do not have a constitutional right to a particular form of communication, such as access to email.") (collecting cases)).

---

BOP's "wide discretion," under 18 U.S.C. § 4042, "to decide on appropriate methods of handling their wards," *Matthews v. Hardy*, 420 F.2d 607, 610 (D.C. Cir. 1969), as well as BOP's implementing "regulations designed to achieve" the goal of securing the prison and protecting the public and thereby "are subject to substantial deference," *Sebolt v. Samuels*, 749 F. App'x 458, 460 (7th Cir. 2018); *see also Lewandowski v. Bureau of Prisons*, 2021 WL 5937671, at *6 (D.N.J. 2021) (agreeing "with other courts throughout the nation that have held that a decision arising from a TRULINCS Program Statement is 'unreviewable' under the APA 'because it falls within the BOP's broad discretionary powers to administer prisons' ") (citations omitted)).

In *Sebolt*, the Seventh Circuit examined BOP's application of the policy at issue here to a prisoner convicted of child sex offenses involving a computer and held "the restriction" to be "sound." 749 F. App'x at 461.  Guided by the four analytical factors set out in *Turner*, the court principally determined that "the Bureau's policy of keeping potential email abusers from using its email system is rationally related to its legitimate security interests." *Id*. at 460.  Next, the court further determined that the prisoner had "alternative means of exercising" his First Amendment right through his facility's regular mail and telephone systems and had "not identified an 'obvious, easy alternative' to the email program that would allow likely email abusers to use email without adding to the prison's monitoring costs." *Id*. at 461 (quoting *Turner*, 482 U.S. at 90); *see Turner*, 482 U.S. at 90-91 (noting that the "absence of ready alternatives" at *de minimis* cost to valid penological interests "is evidence of the reasonableness of a prison regulation").

Here, the challenged decision is similarly based on plaintiff's "offense conduct" involving "the use of electronic messaging to solicit or accomplish offensive conduct with a minor victim." Def.'s Ex. A.  Plaintiff does not allege his inability to communicate by alternative means.  In fact, he admits that "girls" who "have shown an interest in communicating with a prisoner" have written letters but complains that the letters "would be in route for as much as a month." *Id*.  Plaintiff asserts that in his quest towards rehabilitation, he "has attracted" at least "202 profile views" on TikTok.  *Id*.  He attaches to the complaint correspondence from such "girls" that includes their mailing addresses.  *See* Pl.'s Ex. 8B, ECF No. 1-1 at 21.  Alternative communication methods "need not be ideal, however; they need only be available." *Overton*, 539 U.S. at 135.  That plaintiff is unable to "receive" or "answer" his alleged admirers' messages by email or prefers email because it is "speedy," Compl. at 17, does not implicate the First

6

Amendment.[4]

### 2. Fifth Amendment

The Fifth Amendment provides that no person shall be "deprived of life, liberty or property, without due process of law." U.S. Const. amend. V.  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner," *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (cleaned up), but a court must "first determine whether constitutional safeguards apply at all, *i.e.*, whether a private party has a property or liberty interest that triggers Fifth Amendment due process protection."  *Reeve Aleutian Airways, Inc. v. U.S.*, 982 F.2d 594, 598 (D.C. Cir. 1993).  Otherwise, "the procedural requirements of the due process clause are not triggered." *Rious v. U.S. Parole Comm'n*, 183 F. Supp. 3d 170, 173 (D.D.C. 2016) (citing *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010) (other citations omitted)).

Plaintiff has not plausibly alleged a constitutionally protected interest to trigger due process protections.  In the prison setting, a liberty interest is created when the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," *id*. at 485 (cleaned up), and the "denial of privileges" is typical of  "matters which every prisoner can anticipate are contemplated by his original sentence to prison," *Barroca v. Hurwitz*, 342 F. Supp. 3d 178, 193 (D.D.C. 2018) (citing *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991) (en banc)).  Even if plaintiff could demonstrate a protected interest, defendant argues correctly that plaintiff's

---

[4]      To the extent that plaintiff asserts "3rd party free speech deprivations," Pl.'s Opp'n, ECF No. 17 at 9,  he, as a *pro se* party, cannot prosecute the claims of other individuals in federal court.  *See* 28 U.S.C. § 1654 ("In all courts of the United States[,] the parties may plead and conduct their own cases personally or by counsel[.]").

completed administrative remedy provided all the process due under the Constitution.  *See* Def.'s

Mem. at 17-18.

## IV.  CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted, and the Complaint is

dismissed with prejudice.  An appropriate Order accompanies this Memorandum Opinion.


/s/ *Beryl A. Howell*

United States District Judge

DATE:  March 7, 2024